## In re BRINK'S ESTATE.
## BRINK et al. v. TAYLOR, Gdn.

No. 12598—Opinion Filed March 17, 1925.

Rehearing Denied April 21, 1925.

### 1. Guardian and Ward—Removal of Guardian—Grounds.

The failure of a guardian to file an inventory of the estate of his ward coming into his hands, and to file an account, or report of his administration as guardian, as required by law, coupled with other misconduct amounting to exorbitant expenditure of the funds of his ward, and lack of frugality is sufficient to authorize and justify his removal.

### 2. Same—Discretion of Court in Removal.

The removal of a guardian for cause, under section 1491, Comp. Stat. 1921, and the appointment of a successor, rest largely in the sound discretion of the county court, and, unless this discretion is abused, its action will not be disturbed.

(Syllabus by Jones, C.)

Commissioners' Opinion, Division No. 3.

Error from District Court, Creek County; Lucien B. Wright, Judge.

Action by Lusanna Brink, nee Daniels, by Katie Watashe, nee Perryman, as next friend, and H. S. Garland, guardian, against C. C. Taylor. From the judgment, the former appeal. Reversed.

James J. Mars, Geo. L. Burke, and McDougal, Lytle, Allen & Pryor, for plaintiffs in error.

Hulette F. Aby, Wm. F. Tucker, Wm. H. Martin, John. T. Smith, and Eugene B. Smith, for defendant in error.

Opinion by JONES, C. This case was originally instituted in the county court of Creek county by Lusanna Brink,' an incompetent, by Katie Watashe, nee Perryman, her daughter and next friend. The petitioner asks that the said Lusanna Brink be restored to competency and that her guardian, C. C. Taylor, be removed, alleging that said guardian had mismanaged the estate, and had failed to file an inventory and report as required by law. On the trial of the case the effort to restore said Lusanna Brink to competency was abandoned and after the hearing of same the county court found that the said C. C. Taylor, as guardian, had failed

and neglected to file an inventory of the estate, and had not filed his annual reports as required by law, and that the estate had not been frugally administered, and discharged the said C. C. Taylor as guardian and appointed H. S. Garland as guardian. From this order and judgment of the county court the said C. C. Taylor appealed to the district court of Creek county, and upon the hearing of said appeal before Lucien B. Wright, then district judge of Creek county, the judgment of the county court was set aside, and the petition of the applicant was denied, wherein she asked for the removal of C. C. Taylor as guardian. From which judgment of the district court the said Lusanna Brink, Katie Watashe, her next friend, and H. S. Garland prosecute this appeal. The record discloses that C. C. Taylor was appointed guardian of Lusanna Brink on the 19th day of July, 1919, and that during said guardianship Lusanna Brink lived with her daughter, Katie Watashe, and that the said C. C. Taylor received from the estate of the said Lusanna Brink the sum of $331.63 as rentals from lands owned by said Lusanna Brink, and $800 for an oil and gas lease given on said lands; that $100 of the rent money received was afterwards returned to the payor thereof for the reason that the rental contract failed, being in conbict with a rental contract formerly given on said premises, leaving a net aggregate of $1,031.-63 received by the guardian during his administration as guardian for about 19 months. It appears from the record that the said Lusanna Brink had some interest in the allotment of Wallace Jack, a deceased son, and another allotment which seems to be the allotment of a deceased daughter. This interest is variously estimated as being of the value of from $10,000 to $200,000, and was known to the guardian, Taylor, at the time of his appointment. The said Taylor entered into a contract with an attorney to assist him in executing the oil and gas lease and to investigate other matters of interest to the ward, wherein the guardian agreed to pay the attorney 33 1-3 per cent. of all the amounts recovered, and after the payment of the rental of $800, the guardian paid to the attorney $320, forty per cent. of $800 received, paying the said attorney the sum of $53 in excess of the contract, and secured an allowance for himself of $230 for services as guardian, and at the time of the filing of his report in January, 1921, there was a balance of $227.07 due his ward, and showing that approximately $254 had been spent in buying food and clothing for his ward. It is admitted that no inventory of the estate was ever filed by the guardian, and that no

report was filed by him until January 8. 1921, a few days before this suit was originally instituted, and that the said guardian never caused suit to be filed to protect the interest of his ward in the land inherited by her from her children until January 22, 1921, after the suit had been instituted to remove said guardian.

Section 1443, Comp. Stat. 1921, provides that the guardian shall make an inventory of all the estate, real and personal, of his ward that comes to his possession or knowledge, and return same within such time as the judge may order, and further provides:

"To render an account under oath, of the property, estate and monies of the ward in his hands, and all proceeds or interest derived therefrom, and of the management and disposition of same, within three months after his appointment, and at such other time as the court directs," etc.

And section 1449 provides the method of appointment of guardians for all persons mentally incompetent; and section 1451 makes the law applicable to wards and guardians applicable to incompetent wards the same as though they were minors. And section 1454, and the sections of our statutes immediately preceding same, provides for the manner in which guardians shall conduct the affairs of their wards. Section 1455 provides that:

"Every guardian must manage the estate of his ward frugally and without waste, and apply the income and profits thereof as far as may be necessary for the comfortable and suitable maintenance and support of the ward," etc.

Section 1460 provides for the filing of an inventory of the estate of his ward within three months of his appointment, and annually thereafter, and section 1461 provides that the guardian must, within the expiration of a year from the time of his appointment, and as often thereafter as may be required, present his accounts to the county court for settlement and allowance, and the law further provides for the removal of a guardian for abuse of trusts or for continued failure to perform his duty, and in view of the fact that, in this case, the guardian had complied with none of these statutory provisions, and had dissipated about fifty per cent. of the funds received by him from his ward's estate as compensation for himself, and attorneys fee, we think justifies the judgment of the county court in removing said guardian, and that under such state of facts the district court was in error in vacating the judgment of the county court, and in sustaining the contention made by the guardian, C. C. Taylor.

In the case of In re Guardianship of Chambers, 46 Okla. 139, 148 Pac. 148, this court said:

"The removal of a guardian for cause, under said section (referring to section 1491, Comp. Stat. 1921), and the appointment of a successor, rest largely in the sound discretion of the county court, and, unless this discretion is abused, its action will not be disturbed."

It is the duty of courts to guard, with zealous care, the interest of minors and incompetents, and guardianship should not be sought for gain, and while guardians should be, and are, entitled to compensation for their services, it should only be such compensation as is commensurate with the services actually rendered, and this same rule should apply to attorneys who accept employment in guardianship proceedings. A different rule applies than that which properly applies to transactions between individuals possessing no disqualifications: men of mature years and of sound minds are permitted and authorized to deal at arms length, and to enter into such contracts as they deem proper, and when entered into, in the absence of fraud or mistake, the terms and conditions of the contract are enforceable and should be respected by all parties concerned, but in dealing with minors and incompetent wards, no disposition to overreach or unjustly deprive the ward of any of its rights should be recognized, and contracts and transactions affecting the rights of minors and incompetents which are unfair and unjust have no standing in the courts of this country, and when called to the attention of the courts should be disapproved.

In this case the guardian had not filed an inventory and report as required by law, and in the judgment of this court had not frugally managed the estate of his ward, had expended nearly one-third of the funds received for attorney's fee, admits that he overpaid the attorney $53.34, and in appellee's brief the suggestion is made that the court could require him to reimburse the estate, but men should not wait for court orders, and the institution of lawsuits before discharging their duties which are clear and unquestionable, and especially is this true in dealing with minors and incompetents, and where fiduciary relations exist, such as exist between guardians and their wards, such conduct, as is disclosed by the record in this case, is too prevalent in this day and age, and good men may sometimes indulge in such, but courts should never condone it. We think there was ample evidence to sustain and justify the judgment of the county court in removing the guardian, and we therefore recommend that the judgment of the district court be reversed, and the judgment of the county court reinstated.

By the Court: It is so ordered.